FILED
CLERK, U.S. DISTRICT COURT
6/28/2023
CENTRAL DISTRICT OF CALIFORNIA
BY: ___CD___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CR No. 2:23-cr-00313-SB |
|---|---|
| Plaintiff, | I N F O R M A T I O N |
| v. | [18 U.S.C. § 371: Conspiracy to Commit Commodity Fraud] |
| DAVID LEE KAGEL, | |
| Defendant. | |

The United States Attorney charges:

[18 U.S.C. § 371]

A.  INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1. Defendant DAVID LEE KAGEL was a resident of Beverly Hills, California. Defendant KAGEL was an attorney admitted to practice in the State of California, and was the sole attorney at his law firm, Kagel Law P.C., located in Los Angeles, California.

2. A "cryptocurrency" was a digital currency in which transactions were verified and records were maintained by a decentralized system using cryptography, rather than a centralized authority such as a bank or government. Like traditional fiat

currency (defined below), there were multiple types of cryptocurrencies, such as Bitcoin.

3. Cryptocurrency owners typically stored their cryptocurrency in digital "wallets," which were identified by unique electronic "addresses."

4. A "fiat currency" was a government-issued currency that was not backed by a physical commodity, such as gold or silver. U.S. Dollars, British Pounds, and Euros were examples of fiat currencies.

5. Cryptocurrencies, like Bitcoin, could be traded for various fiat currencies on numerous electronic cryptocurrency exchanges.

6. Bitcoin was a "commodity" within the meaning of Title 7, United States Code, Section 1a.

B. THE OBJECT OF THE CONSPIRACY

7. Beginning by no later than in or around December 2017 and continuing until at least in or around June 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendant KAGEL conspired with David Gilbert Saffron and with others known and unknown to the United States Attorney, to knowingly and willfully employ a manipulative and deceptive device, scheme, and artifice to defraud in connection with a contract of sale of Bitcoin, each such contract being a contract of sale of a commodity in interstate commerce, in violation of Title 7, United States Code, Sections 9(1) and 13(a)(5), and in violation of Title 17, Code of Federal Regulations, Section 180.1(a).

C. MANNER AND MEANS OF THE CONSPIRACY

8. The object of the conspiracy was to be carried out, and was carried out, in substance, as follows:

2

a. From in or around December 2017 through at least in or around June 2022, defendant KAGEL with Saffron and their co-conspirators fraudulently promoted and solicited investments and obtained at least approximately $15,000,000 in victim-investor funds for various cryptocurrency trading programs. Defendant KAGEL, Saffron, and their co-conspirators falsely represented to victim-investors that Saffron traded investors' funds and cryptocurrency to earn profits, including through purported cryptocurrency investment vehicles using names such as Circle Society, Bitcoin Wealth Management, the Omicron Trust, and Cloud9Capital, among other names.

b. Defendant KAGEL, Saffron, and their co-conspirators were operating an illegal Ponzi scheme to defraud victim-investors and to take and use the funds for their own personal benefit.

c. Defendant KAGEL and his co-conspirators made numerous false representations to victim-investors to induce them to invest cash or cryptocurrency in their cryptocurrency Ponzi scheme, including that:

i. The investment programs used an artificial intelligence trading robot (an "AI trading bot") to buy and sell cryptocurrencies with victim-investors' funds that were "guaranteed" to repay the principal investment and profits of 20% - 100% of the principal investment amount within 30 days.

ii. Victim-investors' principal investments were protected against loss for any reason and were guaranteed by a 1,000 Bitcoin wallet (approximately $11 million in January 2018) held in escrow by an attorney, namely, defendant KAGEL.

iii. Defendant KAGEL had himself invested in the cryptocurrency trading programs – a false representation that was

3

designed to lend credibility to claims that potential investors' funds would be safely invested.

   d. When victim-investors demanded the return of their initial investment and promised profits, defendant KAGEL made various false representations about the reasons that he could not repay investors until some later time, including but not limited to the false representation that defendant KAGEL was prevented from repaying investors because Saffron had disabled defendant KAGEL's access to the 1,000 Bitcoin wallet, which purportedly guaranteed victim-investors' funds.

  9. In furtherance of the conspiracy, defendant KAGEL, together with other co-conspirators:

   a. Made materially false statements to victim-investors regarding the high-yield returns that would purportedly result from investing in Saffron's cryptocurrency trading programs;

   b. Made materially false statements to victim-investors regarding the use of invested funds, falsely representing that funds would be used to trade cryptocurrency and fiat currency to generate profits for the victim-investors;

   c. Failed to state material facts that made the statements misleading to victim-investors regarding how victim-investors' funds would be used, omitting that funds would be used to personally enrich defendant KAGEL, as well as other co-conspirators;

   d. By and through the co-conspirators' scheme to defraud victim-investors in connection with contracts of sale of Bitcoin, each being a contract of sale of a commodity in interstate commerce, made untrue statements of a material fact, and failed to disclose

material facts that resulted in making their statements misleading; and

   e. Made materially false statements to victim-investors and to potential victim-investors to conceal the scheme and to induce victims to re-invest in the scheme again.

D. <u>OVERT ACTS</u>

 10. On or about the following dates, in furtherance of the conspiracy and to accomplish its object, defendant KAGEL, together with other conspirators, willfully committed and knowingly caused others to commit the following overt acts, among others, within the Central District of California, and elsewhere:

 <u>Overt Act No. 1</u>: On January 21, 2018, defendant KAGEL spoke to potential victim-investors to fraudulently induce them to invest and falsely represented that, as an attorney, defendant KAGEL held a 1,000 Bitcoin wallet in escrow that would guarantee the victim-investors' money against loss for any reason.

 <u>Overt Act No. 2</u>: On January 21, 2018, defendant KAGEL sent letters to victim-investors on letterhead from defendant KAGEL's law firm falsely stating that defendant KAGEL had unrestricted access to a 1,000 Bitcoin wallet that would be used to ensure repayment of the victim-investors' initial investment.

 <u>Overt Act No. 3</u>: On July 28, 2020, defendant KAGEL spoke with Victim S.B. to refer Victim S.B. to Saffron for the purpose of inducing Victim S.B.'s investment into the Ponzi scheme. Defendant KAGEL falsely represented that Saffron was a successful cryptocurrency trader, who made substantial returns for investors. Defendant KAGEL knowingly and willfully omitted to tell Victim S.B. that defendant KAGEL, together with Saffron and their co-

5

conspirators, intended to take and use Victim S.B.'s funds for their own personal benefit, and the omission caused defendant KAGEL's statements to Victim S.B. to be materially misleading.

<u>Overt Act No. 4</u>: On September 30, 2020, to allay Victim S.B.'s concerns that Saffron had defrauded Victim S.B. of $375,000 and to deter and delay Victim S.B. from acting on the concerns, defendant KAGEL falsely represented that defendant KAGEL had also invested with Saffron and defendant KAGEL trusted Saffron based on defendant KAGEL's long relationship with Saffron as his attorney.

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

JAMES C. HUGHES
Assistant United States Attorney
Major Frauds Section

GLENN S. LEON
Chief, Fraud Section
Criminal Division
U.S. Department of Justice

THEODORE M. KNELLER
Trial Attorney, Fraud Section
Criminal Division
U.S. Department of Justice

6